UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil No. 3:18CV549 |
| | : | |
| ONE PARCEL OF PROPERTY | : | |
| LOCATED AT 498 MUNGER LANE, | : | |
| BETHLEHEM, CONNECTICUT, | : | |
| WITH ALL APPURTENANCES AND | : | |
| IMPROVEMENTS THEREON, | : | |
| | : | |
| Defendant. | : | April 2, 2018 |
| | : | |
| [CLAIMANTS: GARY S. DEVOE, | : | |
|  KIMBERLY A. DEVOE, AND | : | |
|  ARVEST CENTRAL MORTGAGE, CO.] | : | |

**VERIFIED COMPLAINT OF FORFEITURE**

Plaintiff, United States of America, by and through its attorneys, John H. Durham, United

States Attorney for the District of Connecticut, and Julie G. Turbert, Assistant United States

Attorney, brings this complaint and alleges as follows in accordance with Rule G(2) of the

Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions:

**NATURE OF ACTION**

1.      This is a civil action *in rem* brought to enforce the provision of 18 U.S.C. §

981(a)(1)(A) for the forfeiture of property involved in a financial transaction in violation of 18

U.S.C. § 1956 or 1957, or to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture

of property which constitutes or is derived from proceeds traceable to an offense constituting

"specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), namely, wire fraud in

violation of 18 U.S.C. § 1343, or conspiracy to commit such offense.

## THE DEFENDANT IN REM

2.      The defendant is one parcel of property located at 498 Munger Lane, Bethlehem,

Connecticut, with all appurtenances and improvements thereon (defendant property), more

particularly described in Exhibit A, which is attached hereto at incorporated herein by reference.

3.      The record owners of the defendant property are Gary S. Devoe and Kimberly A.

Devoe.

4.      The defendant property is owner occupied residential property.

5.      The defendant property was acquired by Gary S. Devoe and Kimberly A. Devoe

for $17,650.00 by warranty deed, dated April 2, 1977, and recorded April 2, 1977, in Volume 59,

at Page 92 of the Bethlehem Land Records. In 1978, a three-bedroom home was built on that lot.

6.      Arvest Central Mortgage Company may have an interest in the property by virtue

of a mortgage in the original principal amount of $250,000, to Wachovia Mortgage Corporation,

dated August 21, 2003, and recorded August 21, 2003, in Volume 256, at Page 203 of the

Bethlehem Land Records. Wachovia Mortgage Company was acquired by Wells Fargo in 2008.

According to Mortgage Electronic Registration Systems, Inc. (MERS), the mortgage is being

serviced by Arvest Central Mortgage Company, formerly known as Central Mortgage Company.

7.      The defendant property has a fair market value of approximately $396,700.00.

8.      The defendant property has not been seized and is located in the District of

Connecticut. The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

        a.      post notice of this action and a copy of the Complaint on the defendant

                property, and

b.  serve notice of this action on the property owners, and any other person or

entity who may claim an interest in the defendant property, along with a

copy of the Complaint, and

c.  execute a writ of entry for purposes of conducting an inspection and

inventory of the property, and

d.  file a lis pendens in the Bethlehem, Connecticut Land Records of the

defendant property's status as a defendant in this in rem action.

9.  The United States will also, as provided in 19 U.S.C. §1606, appraise the

defendant property when it executes a Writ of Entry.

## JURISDICTION AND VENUE

10.  Plaintiff brings this action *in rem* in its own right to forfeit and condemn the

defendant property. This Court has jurisdiction over an action commenced by the United States

pursuant to 28 U.S.C. § 1345, and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

11.  This Court has *in rem* jurisdiction over the defendant property pursuant to 28

U.S.C. 1355(b).

12.  Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), because the

acts or omissions giving rise to the forfeiture occurred in this district.

## BASIS FOR FORFEITURE

13.  The defendant property is subject to forfeiture pursuant to 18 U.S.C. §

981(a)(1)(A) because it constitutes property involved in a financial transaction in violation of 18

U.S.C. § 1956 or 1957, or pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is

derived from proceeds traceable to an offense constituting "specified unlawful activity" (as

defined in 18 U.S.C. § 1956(c)(7)), namely wire fraud in violation of 18 U.S.C. § 1343, or

conspiracy to commit such offense.

## RELEVANT ENTITIES

14.     Gary Devoe is an employee of Company-1.

15.     Company-1 is an insulation contracting company with office locations in

Connecticut and New York.

16.     Company-2 is an insulation contracting company with offices in Massachusetts

and Connecticut.

17.     Company-3 is an insulation contracting company located in Connecticut.

18.     Company-4 is an insulation contracting company located in Connecticut.

## SCHEME

19.     Company-1, including employees Gary Devoe ("Devoe") and others, colluded to

rig bids and engage in fraud with Company-2, Company-3, and Company-4 in connection with

the bidding and award of insulation contracts at public and private entities located throughout the

Northeastern United States (including Connecticut, Massachusetts, and New York), from at least

as early as October 2011 and continuing to the present.

20.     Entities, such as universities, hospitals, and other public and private entities,

generally solicit competitive bids from and enter into contracts with mechanical contractors who

provide, among other things, plumbing and/or HVAC (heating, ventilation and air conditioning)

services on renovation or new construction projects. In turn, mechanical contractors solicit

competitive bids from, and enter into subcontracts with, insulation contractors to perform the

insulation portion of the work on those plumbing and/or HVAC projects. Depending on the size

of the project, the entities may solicit bids from and enter into contracts directly with the

insulation contractors, or may solicit bids from and enter into contracts with a general contractor

who will, in turn, solicit bids from and enter into contracts with insulation contractors.

21.     The confidentiality and independence of the bids are essential to maintaining

integrity and fairness during the bidding process, and in ensuring that customers receive the best

value. In some cases, bidders are required to certify that they have not engaged in

anticompetitive conduct (i.e., by signing certificates of non-collusion or independent pricing).

22.     The companies involved in the bid rigging and fraud scheme received contracts

through the bidding process in the tens of thousands to millions of dollars, depending on the size

of the project.

23.     In connection with and in furtherance of their bid rigging and fraud scheme, the

participants—including Devoe—used the following methods:

a.     Shared proposals, estimates, and other bid information with and among

each other, and coordinated bids to ensure that one or more inflated bids were submitted for

insulation projects;

b.     Falsely certified that the bid prices submitted for insulation contracts were

independently arrived without fraud, collusion or connection of any kind with any other bidder

for the same work;

c.     Used email, text messages and other electronic means to share proposals,

estimates and other bid information with competitors, and to submit false certifications of

independent pricing as part of the bidding or award of insulation contracts;

5

d.      Utilized shell companies to own or control competitors who also

submitted bids on insulation contracts;

e.      Made cash payoffs to other members of the conspiracy;

f.      Moved and used proceeds from the conspiracy by transferring funds from

corporate accounts into their personal accounts, retirement accounts, and mortgages.

24.     In sum and substance, Devoe and others rigged bids for insulation contracts,

inflated the prices included on those bids, falsely certified that the bids were arrived out

independently or without fraud, and enriched themselves as a result of such conduct.

## THE DEFENDANT PROPERTY

25.     Mortgage loan payments on defendant property from 2010 through 2017 can be

traced to money Devoe received from Company-1 and Company-4's accounts, which contained

the proceeds of the fraud. Company-1 has a checking account ending in 4316 at J.P. Morgan

Chase Bank that is labeled "primary account" on the bank statements (Company-1 primary

account). Payments from contractors are deposited into the Company-1 primary account.

Company-1 is paid by mechanical sub-contractors after the project is complete. A review of

these accounts indicates that the proceeds of the bid rigging and fraud scheme are deposited into

the Company-1 primary account. Company-1 has a checking account ending 9100 at J.P. Morgan

Chase Bank that is labeled "payroll account" (Company-1 payroll account). The Company-1

payroll account is funded by transfers from the Company-1 primary account. Salaries are paid to

employees, including Devoe, from the payroll account through a payroll service.

26.     Mortgage loan payments on defendant property from 2013 through 2017 can be

traced to money Devoe received from Company-1 and Company-4 in two ways: as a salaried

employee of Company-1, and payments to Stephen Consulting Group, LLC, an entity Devoe

created in 2014.

27.     Devoe receives a salary from Company-1 payroll account that averages about

$2,500 per week that is deposited into Devoe's Wells Fargo Bank checking account # 5423.

From April 17, 2013 to April 26, 2017, 211 deposits totaling $605,625.90 was deposited from

Company-1 payroll account to Devoe's Wells Fargo Bank checking account # 5423.

28.     Devoe also receives periodic distribution from Company-1 and Company-4 as

checks made payable to Stephen Consulting Group, LLC. Stephen Consulting Group, LLC was

registered in Connecticut on September 4, 2014. The only member listed is Devoe. The records

list the company's address as 429 Main Street, Watertown, Connecticut, a rental property Devoe

owned. An online search failed to identify anything about Stephen Consulting Group, LLC.

Devoe opened a Wells Fargo checking account ending in #6113 in the name of Stephen

Consulting Group, LLC. The deposits are checks from Company-1's J.P. Morgan Chase

checking account #4316 (total amount $200,000) and Company-4's Union Savings Bank account

#6844 (total amount $179,000):

| | | |
|---|---|---|
| 10/03/2014 | $50,000.00 | Company-1 |
| 12/11/2014 | $25,000.00 | Company-1 |
| 02/05/2015 | $25,000.00 | Company-1 |
| 05/02/2016 | $15,000.00 | Company-4 |
| 06/15/2016 | $100.000.00 | Company-1 |
| 11/10/2016 | $49,000.00 | Company-4 |

08/18/2017     $30,000.00     Company-4

Total deposits  $379,000.00

29.     Devoe transferred money from the Stephen Consulting account to several

different accounts he held at Wells Fargo, including $30,500 into checking account #5423. Most

of the money from the Stephens Consulting account was used to open investment accounts at

UBS.

30.     Devoe paid the mortgage payments on defendant property from Wells Fargo

account # 5423. From April, 2013 through May, 2017, forty-eight monthly payments of

approximately $1,630 were made to Central Mortgage Company on line for mortgage number

ending in 8127 for a total of $78,279.01 from Wells Fargo account # 5423.

## CONCLUSION

31.     The defendant property was involved in a transaction or attempted transaction, or

traceable thereto, in violation of 18 U.S.C. §§ 1956 and 1957, or represents property which

constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343, and is

therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A); or that it constitutes or is

derived from proceeds traceable to an offense constituting "specified unlawful activity" (as

defined in 18 U.S.C. § 1956(c)(7)), namely wire fraud in violation of 18 U.S.C. § 1343, and is

therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States of America respectfully asserts that there is reasonable

belief that the defendant property is subject to forfeiture to the United States pursuant to 18

U.S.C. §§ 981(a)(1)(A) or (C); and requests

(a)  that pursuant to 18 U.S.C. § 985(b)(2), and 18 U.S.C. § 981(j), which permits the Court

to "take any action to…preserve the availability of the property subject to civil forfeiture," the

Court issue the proposed Writ of Entry submitted with this Verified Complaint of Forfeiture

authorizing the United States Marshals Service, or its delegate, to enter the defendant property,

including any structures, on one or more occasions during the pendency of this in rem forfeiture

action:

      (1)     for the purpose of conducting an inspection and inventory and appraisal of the

            defendant property, which inspection and inventory and appraisal may include

            still and video photography;

      (2)     to be accompanied on any such occasion by any appraiser(s) selected by it to

            appraise the condition and value of the defendant property pursuant to 19 U.S.C. §

            1606;

      (3)     to be accompanied on any such occasion by any government or contract personnel

            selected by it for the purpose of conducting an inventory of the defendant

            property defendant; and

      (4)     to be accompanied on any such occasion by any federal, state, or local law

            enforcement officers selected by it to ensure the safety of any person acting under

            the Writ of Entry.

(b)  that the Court decree that the forfeiture of the defendant property to the United States

under 18 U.S.C. §§ 981(a)(1)(A) or (C) is confirmed, enforced, and ordered;

(c)  that the Court thereafter order that the United States Marshal, or his delegate, dispose of

the defendant property as provided by law; and

(d) that the Court award Plaintiff United States all other relief to which it is entitled,

including the costs of this action.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY


   */s/ John B. Hughes*
JOHN B. HUGHES
CHIEF, CIVIL DIVISION
ASSISTANT U.S. ATTORNEY



   */s/ Julie G. Turbert*
JULIE G. TURBERT
ASSISTANT U.S. ATTORNEY
ATTORNEY BAR #ct23398
157 CHURCH STREET
NEW HAVEN, CT 06510
TELEPHONE: (203) 821-3700
FAX: (203) 773-5373
EMAIL: Julie.Turbert@usdoj.gov

DECLARATION

I am a Special Agent of the Federal Bureau of Investigation and the case agent assigned

the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture, and it is true

to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2nd day of April, 2018.


                                    /s/ Russell Frandsen
                                    RUSSELL FRANDSEN
                                    SPECIAL AGENT
                                    FEDERAL BUREAU OF INVESTIGATION


11

a certain piece
or parcel of land, with all the improvements thereon, situated on the
easterly side of Munger Lane in the Town of Bethlehem, County of Litch-
vield and State of Connecticut, being shown as Lot No. 24 on a map
entitled "Long Meadow, Final Plan, Section 2, Map Prepared for LONG
MEADOW ASSOCIATES, Munger Lane, Town of Bethlehem, County of Litchfield,
State of Connecticut Scale 1" = 100', July, 1975", made by Arthur H.
Howland, R.L.S. & P.E., filed for record at the Bethlehem Town Clerk's
Office being bounded and described as follows:

NORTHERLY:   604.955 feet on Lot No. 25;
EASTERLY:    180.00  feet on Lot No. 21, as shown on said map;
SOUTHERLY:   505.444 feet on Lot No. 23, as shown on said map; and
WESTERLY:    290.00  feet on Munger Lane.



GOVERNMENT
EXHIBIT

A

CARDELS 800-783-0399